UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN SAM, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br> -against-<br><br>STONE SECURITY SERVICE, INC., and GLOBAL EVENT STAFFING, INC., both d/b/a STONE SECURITY SERVICES, and DAVID STONE,<br><br>        Defendants. | Case No. 24 Civ. 5620<br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Kevin Sam ("Plaintiff"), by and through his attorneys, Menken Simpson & Rozger LLP, hereby complains of his former employers, Stone Security Service, Inc., and Global Event Staffing, Inc., both doing business as Stone Security Services, and David Stone (collectively, "Defendants" or "Stone Security"), as follows:

**NATURE OF THE ACTION**

1. Stone Security is a private security company owned and operated by Defendant David Stone.

2. For years, Plaintiff Kevin Sam worked as a security guard for Stone Security and was denied substantial overtime pay.

3. Plaintiff now brings this action on behalf of himself and a class and collective of similarly situated current and former employees to redress systematic and pervasive violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including failure to pay overtime and spread-of-hours premiums, failure to provide complete and accurate wage statements, and pay frequency violations.

1

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants' principal office is in New York County and because the events and omissions giving rise to Plaintiff's claims occurred in New York County.

## PARTIES

6. Plaintiff Kevin Sam is an adult individual residing in the Bronx, New York.

7. Defendant Stone Security Service, Inc., is a New York corporation with its headquarters and principal place of business at 5 Penn Plaza, New York, NY 10001.

8. Defendant Global Event Staffing, Inc., is a New York corporation with its headquarters and principal place of business at 5 Penn Plaza, New York, NY 10001.

9. Defendant David Stone is an adult individual residing in New York and Florida. Stone owns and operates Stone Security Service, Inc. and Global Event Staffing, Inc.

10. On information and belief, Stone Security Service, Inc. and Global Event Staffing, Inc. are part of a single integrated enterprise and/or alter egos of each other. When Plaintiff applied for unemployment insurance benefits after separating from Stone Security, he was informed by the State that the correct entity was Global Event Staffing—not Stone Security—despite the fact that all of his employment documents identify his employer as Stone Security.

11. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the NYLL and the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

12. Plaintiff brings his FLSA claims on behalf of himself and all similarly situated nonexempt, hourly employees who worked as security guards for Defendants at any point over the 3 years preceding the filing of this Complaint until Defendants cease their unlawful acts ("FLSA Collective Action").

13. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff, and, as such, notice should be sent to all others similarly situated. There are numerous similarly situated current and former employees of Defendant who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

## CLASS ACTION ALLEGATIONS

14. Plaintiff brings New York Labor Law claims on behalf of himself and a Class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of all nonexempt hourly employees of Defendants who worked as security guards at any point over the 6 years preceding the filing of this Complaint until Defendants cease their unlawful acts (the "Class Period").

15. The persons in the Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is presently unknown to Plaintiff, and calculation of such number would require facts in the sole control of Defendants, upon information and belief, Defendants have employed at least 100 such persons during the Class Period.

16. Plaintiff's claims are typical of the claims of the Class.

17. Plaintiff will fairly and adequately protect the interests of the Class.

18. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices and procedures. Although the relative damages suffered by individual class members may not be *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

19. Defendants have acted on grounds generally applicable to the Class, thereby making declaratory relief appropriate for the Class, to wit, by failing to pay overtime and spread-of-hours wages as required by the New York Labor Law, and by failing to pay Plaintiff and Class Members on a weekly as opposed to biweekly basis.

20. There are questions of law and fact common to the Class which predominate over any questions solely affecting individual members of the Class, including, *inter alia*:

   a. Whether Defendants are jointly and severally liable for the within described wage violations as alter egos of each other or, in the alternative, as a single employer or single integrated enterprise;

   b. Whether Plaintiff and the Class are "manual workers" subject to the New York Labor Law's pay frequency provision, NYLL § 191;

4

c. Whether Defendants failed to provide Plaintiff and the Class legally sufficient wage statement notices as required by NYLL § 195(3);

d. Whether Defendants kept accurate time and pay records for Plaintiff and the Class as required by NYLL § 195(4);

e. Whether Defendants failed to pay Plaintiff and the Class spread-of-hours wages pursuant to 12 N.Y.C.R.R. § 142-3.4; and

f. Whether Defendant failed to pay Plaintiff and the Class overtime wages at a rate of one- and one-half times their regular rate of pay, or, in the alternative, one- and one-half times the minimum wage rate, within the meaning of the New York Labor Law Article 12 and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R.§ 142-2.2.

## FACTUAL ALLEGATIONS

### Job Duties

21. During the relevant time period, Stone Security employed approximately 100 security guards whose job was to provide "executive protection" to the company's clientele of diplomats, businesspeople, and celebrities.

22. Security guards' job duties involved physically guarding and monitoring the clients, buildings, and events they were assigned to by Stone Security's founder and CEO, David Stone.

23. The job required a high level of physical fitness for security guards to perform the physical duties demanded of them. In addition to being on their feet for long periods of time, the job also required them to be able to physically address any threats to the security of Stone's clients if and when necessary.

24. Additionally, the need for 24/7 security meant that security guards were frequently working long hours without any meal or rest breaks.

25. They also accrued significant overtime, working more than 40 hours in a week nearly every single week.

Pay & Timekeeping Practices

26. Plaintiff and Class Members would "clock" in and out of each shift by either writing their names on a sign-in/sign-out sheet or logging their time using an ADP application on their smart phones.

27. Every two weeks, Plaintiff and Class Members would fill out and submit timesheets to David Stone detailing the number of hours they worked each day during the preceding two weeks.

28. Stone also required Plaintiff and Class Members to identify their regular hourly rate on each timesheet and multiply the total number of hours worked by their hourly rate to calculate their "total gross pay."

29. Despite being manual workers, Plaintiff and Class Members were paid by Defendants (typically by check or direct deposit) once every two weeks instead of once every week.

30. Occasionally, Stone would pay Plaintiff and Class Members by Zelle, using his personal bank account instead of paying them through payroll processing company ADP. Paystubs or wage statements would not be generated for those payments.

31. As a matter of policy, Defendants did not pay overtime premiums to Plaintiff and Class Members for hours worked in excess of 40 in a week.

32. Instead, Defendants paid Plaintiff and Class Members "straight time" for all hours worked, with some limited exceptions.

33. For example, Plaintiff and Class Members were sometimes paid one and one-half times their regular rate of pay for one day if they worked a shift lasting longer than 10 hours.

34. To disguise the fact that Defendants' official policy was to avoid paying employees overtime, Defendants deliberately removed the "Overtime" section from their employee handbook.

35. If Plaintiff or Class Members included overtime premiums in the "total gross pay" calculations on their timesheets, Stone would reprimand them and have them change the timesheets to reflect "straight time" for all hours worked.

36. Defendants frequently did not pay Plaintiff and Class Members spread-of-hours premiums for shifts exceeding 10 hours.

37. Defendants also failed to provide Plaintiff and Class Members with complete and accurate wage statements, as required by NYLL § 195.

38. Every other week, Plaintiff and Class Members would receive paystubs from ADP reflecting only their gross pay, net pay, and applicable deductions. The wage statements did not contain any information about their regular rate of pay, their overtime rate of pay, or their hours worked.

39. These incomplete wage statements made it difficult for Plaintiff and Class Members to know whether and to what extent they were underpaid. Defendants' failure to provide complete and accurate wage statements also prevented them from knowing whether they were entitled to overtime to begin with. Such knowledge would have empowered them to vindicate their rights much sooner.

Plaintiff Kevin Sam

40. Plaintiff Kevin Sam ("Sam") worked as an armed security guard for Stone Security for approximately two years, from 2022 until June 30, 2024.

41. For the entirety of his employment, Sam was one of 30-40 Stone Security bodyguards assigned to secure the Permanent Mission of the United Arab Emirates to the United Nations ("UAE Mission"), located in Manhattan.

42. His job duties at the UAE Mission involved securing the building and providing protection for the diplomats inside. He and his coworkers were responsible for screening the area for unauthorized visitors and vehicles, preventing the entry of unauthorized visitors and vehicles, monitoring CCTV footage of the building, printing temporary IDs for contractors entering the building, and receiving, scanning, and logging packages delivered to the building.

43. Sam and his coworkers were also responsible for securing large events hosted at the Mission, which was a frequent occurrence.

44. From January to June 2024, Sam also worked as the bodyguard to a Kuwaiti diplomat, who he was required to physically accompany wherever he went ("Kuwait Mission").

45. Sam was also assigned to guard the diplomat's children, who he would take to and from school and accompany around the city.

46. Occasionally, Sam was assigned to secure the diplomat's home in Connecticut.

47. Sam was also assigned to guard the residence of an ambassador to the UAE, where he worked substantial overtime hours. In addition to the long hours, he was forced to work without a lunch break and with extremely limited access to a restroom due in part to an aggressive dog on the premises.

48. Sam frequently worked more than 40 hours per week performing these duties, with some shifts lasting as long as 13 hours.

49. During the week of December 17, 2023, for example, Sam worked 56 hours at the UAE Mission and was paid straight time at his regular rate of $35 per hour. Instead of the $2,240 he was entitled to for his work that week, Sam was paid only $1,960.

50. The following week, from December 24 to 31, 2023, he worked 62 hours and was paid only $2,380 as opposed to the $2,570 to which he was entitled.

51. Sam also accrued significant overtime each year providing security to the United Nations during the annual session of the UN General Assembly. The vast majority of Defendants' employees were assigned to work this event alongside him, and all of them accrued overtime during each of the session's two weeks.

52. Sam also worked shifts lasting longer than 10 hours without receiving any spread-of-hours premiums. On March 13, 2024, for example, he worked a 12-hour shift at the Kuwait Mission and was not paid for an additional hour of work at the applicable minimum wage rate, as required by New York law.

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Unpaid Overtime Wages

53. Plaintiff repeats and incorporates by reference all of the above allegations as though fully set forth herein.

54. Defendants violated the rights of Plaintiff and putative Collective Members by failing to pay overtime compensation at a rate not less than one and one-half times the regular rate of pay for each hour worked in excess of 40 in a week, in violation of the FLSA, 29 U.S.C. § 207(a)(1).

55. Defendants' failure to pay overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

56. Defendants are therefore liable to Plaintiff and putative Collective Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to the FLSA.

## SECOND CAUSE OF ACTION
### New York Labor Law – Unpaid Overtime Wages

57. Plaintiff repeats and incorporates by reference all of the above allegations as though fully set forth herein.

58. 12 N.Y.C.R.R. § 142-2.2 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for hours worked in excess of 40 in a week.

59. Defendants willfully violated Plaintiff's and putative Class Members' rights under the New York Labor Law by failing to pay them wages due and owing for work performed in excess of 40 hours in a week.

60. Due to Defendants' New York Labor Law violations, Plaintiff and putative Class Members are entitled to recover from Defendants their unpaid overtime premium wages, liquidated damages, reasonable attorney's fees and costs of the action, pre-judgment and post-judgment interest, and other compensatory and equitable relief pursuant to NYLL Article 6, §§ 190 *et seq.*, and Article 9, §§ 650 *et seq.*

## THIRD CAUSE OF ACTION
### New York Labor Law – Failure to Pay Spread-of-Hours Wages

61. Plaintiff repeats and incorporates by reference all of the above allegations as though fully set forth herein.

62. Defendants willfully failed to pay Plaintiff and putative Class Members "spread of hours" premiums as required by 12 N.Y.C.R.R. § 142-2.4.

63. Due to Defendants' New York Labor Law violations, Plaintiff and putative Class Members are entitled to recover from Defendants their unpaid spread-of-hours premium wages, liquidated damages, reasonable attorney's fees and costs of the action, pre-judgment and post-judgment interest, and other compensatory and equitable relief pursuant to NYLL Article 6, §§ 190 *et seq.*, and Article 9, §§ 650 *et seq.*

## FOURTH CAUSE OF ACTION
### New York Labor Law – Pay Frequency Violations

64. Plaintiff repeats and incorporates by reference all of the above allegations as though fully set forth herein.

65. NYLL § 191 provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."

66. Plaintiff and putative Class Members were "manual workers" within the meaning of NYLL §§ 190 and 191.

67. Defendants willfully violated NYLL § 191 by paying Plaintiff and putative Class Members once every other week as opposed to once every week.

68. Due to Defendants' New York Labor Law violations, Plaintiff and putative class members are entitled to recover from Defendants the full value of all unpaid wages, liquidated damages, reasonable attorney's fees and costs of the action, pre-judgment and post-judgment interest, and other compensatory and equitable relief pursuant to NYLL Article 6, §§ 190 *et seq.*, and Article 9, §§ 650 *et seq.*

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements

69. Plaintiff repeats and incorporates by reference all of the above allegations as though fully set forth herein.

70. Pursuant to NYLL § 195(3), every employer is required to

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

71. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and putative Class Members with wage statements meeting these requirements.

72. NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250 for each workday that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with reasonable costs and attorney's fees as well as appropriate injunctive and/or declaratory relief).

73. Defendants consistently and willfully failed to provide Plaintiff and putative Class Members with adequate wage statements as required by New York law.

74. Defendants are therefore liable to Plaintiff and putative Class Members in the amount of $250 per day per employee, up to a maximum of $5,000 per employee, plus reasonable attorney's fees and costs and any other relief appropriate under NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for the following relief:

a. Unpaid wages, attorney's fees, costs, and interest pursuant to NYLL § 198(1-a);

b. Statutory damages pursuant to NYLL § 198(1-d);

c. Liquidated damages pursuant to NYLL § 198(1-a);

d. Certification of this case as a class and collective action pursuant to Rule 23 of the Federal Rules of Civil Procedure and the FLSA;

e. Designation of Plaintiff Kevin Sam as representative of the Class, and counsel of record as Class Counsel;

f. Issuance of a declaratory judgment that the practices complained of herein are unlawful under the New York State Labor Law;

g. An injunction enjoining Defendants' conduct; and

h. Such additional and further relief as the Court finds just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.


Dated: July 25, 2024
       New York, New York

MENKEN SIMPSON & ROZGER LLP

/s/

Scott Simpson
Raya F. Saksouk
80 Pine St., 33rd Fl.
New York, NY 10005
(212) 509-1616
ssimpson@nyemployeelaw.com
rsaksouk@nyemployeelaw.com

*Attorneys for Plaintiff and the Putative Class and Collective*