# MENKEN SIMPSON & ROZGER LLP

80 PINE STREET, 33RD FLOOR
NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616
FACSIMILE: (212) 509-8088
WWW.NYEMPLOYEELAW.COM

BRUCE E. MENKEN
SCOTT SIMPSON
JASON J. ROZGER △
BRENNA RABINOWITZ
RAYA F. SAKSOUK

△ ALSO ADMITTED NJ

ALAN SERRINS
OF COUNSEL

April 23, 2025

**By ECF**
U.S. District Judge Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Kevin Sam, et al. v. Stone Security Service, Inc. et al*, No. 24-cv-05620 (GHW)
**Joint Letter Motion to Approve the Settlement**

Dear Judge Woods:

This office represents the Plaintiffs in the above referenced matter. (Declaration of Scott Simpson in Support of the Parties Joint Letter Motion to Approve the Settlement ("Simp. Decl.") ¶ 1). Plaintiffs submit this letter jointly with Defendants setting forth our views on why the Court should approve the agreed-upon settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties have agreed to settle the case after extensive settlement discussions. *See* (Simp. Decl. ¶ 6, Ex. 1 and Ex. 2) (hereafter, the "Settlement Agreements" or "Agreements").

Plaintiffs allege that they were employed by Defendants at Defendants' security guard company. Plaintiffs brought this suit alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), violations of the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL"). Plaintiffs allege that Defendants engaged in violations of the FLSA and NYLL, including failure to pay appropriate overtime wages, pay frequency violations, and failure to provide accurate and statutorily required wage statements and wage notices. (Simp. Decl. ¶ 7). Defendants have denied these allegations and asserted several affirmative defenses, including that many putative class members waived their right to participate in a collective and class action. (Simp. Decl. ¶ 8).

    I.    **The Proposed Settlement is Fair and Reasonable**

Under the Settlement Agreements, Defendants will pay a total of $45,000.00 to settle all claims in the litigation. (Simp. Decl. ¶ 9). The $45,000.00 will be split between a $30,000.00 gross amount for Sam and a $15,000.00 settlement for Wolf-Davidson. (Simp. Decl. ¶ 10).

1

Within 30 days of the Court's approval of the Agreements, Defendants will cause to be forwarded to Plaintiffs' counsel six checks as follows:

- For Kevin Sam, two checks payable to Sam in the gross amount $9,692.50 (one IRS Form W-2 check and one IRS Form 1099 check), and third check payable to Menken Simpson & Rozger LLP in the gross amount of $10,615 for attorneys' fees ($10,000.00) and costs ($615.00).

- For Jonathan Wolf-Davidson, two checks payable to Wolf-Davidson in the gross amount $5,000.00 (one IRS Form W-2 check and one IRS Form 1099 check), and third check payable to Menken Simpson & Rozger LLP in the gross amount of $5,000.00 for attorneys' fees.

(Simp. Decl. ¶ 11).

Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below *Wolinsky* factors, in determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

*Beckert v. Ronirubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

***Wolinsky Factors 1 and 3.*** The range of possible recovery is anywhere from an aggregate total of approximately $9,000 to $193,603.00.[1] (Simp. Decl. ¶ 12). The damages are divided into three components: NYLL and FLSA overtime, NYLL § 195(3), and NYLL § 191. (Simp. Decl. ¶ 13). The parties agree that the overtime damages component of the cause is by far the strongest of Plaintiffs' claims. (Simp. Decl. ¶ 14). Plaintiffs allege that they are entitled to unpaid overtime wages from Defendants in the amount of approximately $9,000.00 ($7,800.00 for Sam and $1,200.00 for Wolf-Davidson), plus an equal amount in liquidated damages. This calculation is based on the payroll and time records exchanged. (Simp. Decl. ¶ 15). Plaintiffs and Defendants agree on the calculations but not on liability nor whether Plaintiffs are entitled to liquidated damages. (Simp. Decl. ¶ 16).

---

[1] The minimum, 9,000.00, would be just overtime damages with no liquidated damages. The maximum of the range includes liquidated damages on the overtime claims for each plaintiff (another $9,000.00); $10,000.00 total ($5,000.00 each) for the NYLL § 195(3) claims, and an aggregate total of $165,603.00 for Plaintiffs' pay frequency claims ($114,899.00 for Kevin Sam and $50,704.00 for John Wolf-Davidson).

Proving the NYLL § 195(3) and the NYLL § 191 claims would be challenging for Plaintiffs. Defendants would argue that Plaintiffs could not show that they were harmed by any failure by Defendants to include the information required by the statute for purposes of proving the NYLL § 195(3) claims. (Simp. Decl. ⁋ 17). Plaintiffs also faced a steep uphill battle in proving their NYLL § 191 claims, as (i) Defendants contend that there is no private cause of action that exists for a NYLL § 191 pay frequency claims (and the parties acknowledge that the state courts are divided on this issue) (Simp. Decl. ⁋ 18), and (ii) Defendants contend that Plaintiffs are not manual laborers, and therefore are not eligible for damages under the statute even if the courts concluded that a private right of action does exist. (Simp. Decl. ⁋ 19). While Plaintiffs do not concede either point, they do acknowledge the vulnerability of these claims, and the settlement amount is reflective of the challenges they would face in proving a pay frequency claim. (Simp. Decl. ⁋ 20).

Finally, Plaintiffs would face other litigation risks should this case proceed. Defendants have represented that their clients have limited resources to pay an eventual judgment, which could leave Plaintiffs with a pyrrhic victory in the event they were to prevail. (Simp. Decl. ⁋ 21). Additionally, the viability of this case as a class action is questionable as the vast majority of putative class and collective members (but not the named Plaintiffs) signed an arbitration and class action waiver agreement that might prevent Plaintiffs from obtaining numerosity. While the parties disagree on whether these agreements are enforceable, and have engaged in substantive discussions on this point as a part of settlement negotiations Plaintiffs concede that obtaining class certification would be challenging considering these agreements. (Simp. Decl. ⁋ 22).

*Wolinsky Factor 2.* This settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses. The parties expect a substantial amount of motion practice in this case, including but not limited to: (i) Defendants' motion to stay the case pending the New York Court of Appeals' resolution of the viability of claims under NYLL § 191; (ii) Defendants' anticipated motion to dismiss the claims under NYLL § 195(3) (lack of Article III standing) and the NYLL § 191 (on grounds that Plaintiffs were not manual laborers); (iii) Plaintiffs' anticipated motions for conditional certification and class certification; (iv) summary judgment motions by both Plaintiffs and Defendants; and (v) discovery-related motions, including motions to compel class-wide discovery and pre-class certification. (Simp. Decl. ⁋ 23). Discovery would involve at least five depositions and thousands of pages of pay records for each putative class member, along with electronically stored information requests from both sides. (Simp. Decl. ⁋ 24). Considering the volume of litigation that would lie ahead for the parties, a settlement at this juncture makes the most sense.

*Wolinsky Factors 4 and 5.* This settlement agreement is the product of arm's-length bargaining between experienced counsel and there is no possibility of fraud or collusion. (Simp. Decl. ⁋ 25). This matter was put on a path to settlement after a productive half-day mediation session on December 17, 2024, with Cyrus Dugger, an experienced mediator on the SDNY mediation panel. (Simp. Decl. ⁋ 26). Prior to the mediation session, the parties exchanged documents, including time and pay records, damages calculations, and portions of their mediation statements that were submitted to the mediator. (Simp. Decl. ⁋ 27). Most critically, the parties exchanged substantive legal memos for settlement purposes only on the issue of the enforceability of the arbitration and class action waiver agreements. (Simp. Decl. ⁋ 28). At the

3

end of the mediation session, the parties had moved closer to a resolution. (Simp. Decl. ¶ 29). Over the course of the next three months, the parties were able to bridge the gap on their own until a settlement in principle was reached on March 24, 2025. (Simp. Decl. ¶ 30).

In summary, Plaintiffs were able to obtain more than their unpaid overtime wages plus liquidated damages in this settlement. (Simp. Decl. ¶ 31). Given the challenges, length of time, and burdensome litigation that Plaintiffs would have had to face for the low-probability chance of proving the remaining claims or obtaining class certification, Plaintiffs are happy with this result and look forward to the case being finally resolved. (Simp. Decl. ¶ 32). Considering the facts in this case outlined above, Plaintiffs believe that this settlement is fair and should be approved. (Simp. Decl. ¶ 33). *See Johnson v. Brennan,* No. 10 Civ. 4712(CM), 2011 WL 4357376, at *12 (S.D.N.Y. September 16, 2011) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.")

## II.    Plaintiffs' Attorneys' Fees are Fair and Reasonable

Under the settlement agreement, Plaintiffs' counsel will receive a total of $15,615.00 from Defendants as attorneys' fees and costs. This represents one third of the recovery in this litigation as attorneys' fees, plus $615 in costs, consistent with amounts set forth in MSR's retainer agreement with each Plaintiff. (Simp. Decl. ¶ 34). The lodestar amount as of April 7, 2025, as reflected on the following chart and contained in our billing records (Simp. Decl. Ex. 3), is **$37,652.50**, plus $615.00 in costs.

| Attorney/Staff Member | Rate | Hours | Total |
|---|---|---|---|
| Scott Simpson, Partner | $600.00 | 47.30 | $28,140.00 |
| Raya Saksouk, Senior Associate | $375.00 | 16.70 | $6,262.50 |
| Samuel J. Salinger, Law Graduate | $250.00 | 13 | $3,250.00 |
| **TOTAL** | | **77** | **$37,652.50** |

(Simp. Decl. ¶ 35).

Courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases. See *Gaspar v. Personal Touch Moving, Inc*., No. 13-CV-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District."); *Najera v. Royal Bedding Co., LLC*, No. 13-CV-1767 NGG MDG, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (citing *Palacio v. E*TRADE Fin. Corp*., No. 10-CV-4030 (LAP)(DCF), 2012 WL 2384419, at *6 (S.D.N.Y. June 22, 2012)) ("one-third contingency fees . . . are commonly accepted in the Second Circuit in FLSA cases"); *see also Fisher v. SD Prot. Inc*., 948 F.3d 593, 605 (2d Cir. 2020) (re-writing FLSA settlement agreement to reduce contingent fee to one-third was abuse of discretion). Here, Menken Simpson & Rozger LLP's ("MSR's") lodestar of $37,892.50 is more than 2.5 times the $15,000 in actual fees we are

4

seeking, resulting in a "lodestar multiplier" of .4. (Simp. Decl. ¶ 36). Below is a brief biography of individuals who performed billable work on behalf of Plaintiffs in this matter, including the effective billable rate which the parties' request that the Court apply should the Court undertake a "lodestar analysis of the fairness of such fees." (*see*, e.g, *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 493 F. 3d 110 (2d Cir. 2007):

i. **Scott Simpson** is a 2008 graduate of the University of Michigan Law School who has been practicing law for over 16 years. Following his seven years as criminal defense lawyer and eventual supervisor at The Bronx Defenders, he joined MSR (then named Beranbaum Menken LLP) in October 2015 as an associate and was promoted to partner on January 1, 2018. His practice is exclusively focused on labor and employment. He currently is litigating several wage-related class actions in state and federal courts, including *Joefield et al. v. SEKO Worldwide LLC*, 22-cv-06822-LB; *Agudelo et al. v. Recovco et al.*, 22-cv-4004 (JMA) (LGD) and *Aguirre et al v. CDL Last Mile Solutions, LLC, et al.*, BER-L-001172-23, Superior Court of New Jersey Law Division. He has served as the lead attorney on a number of wage and hour class actions, including *Williams v. Epic Security Corp.*, 358 F.Supp.3d 284 (S.D.N.Y. 2019), in which he secured a favorable decision following an over-two-week-long trial on behalf of a group of security guards. In that case, Magistrate Judge Aaron awarded him an hourly rate of $350, noting that his then-$400 per hour was not appropriate at that time because Mr. Simpson was not a partner during the vast majority of the case. *See* 15-cv-5610, ECF 199 at 7. The New York Comptroller's office approved an hourly rate of $400 for Mr. Simpson over five years ago in October 2019, in the case of *Cojocaru and Haber v. CUNY et al.*, No. 19-cv-5428 (S.D.N.Y.), a gender discrimination case. Mr. Simpson's current $600/hr rate is what clients routinely pay him, and he can provide redacted retainer agreements upon the Court's request. (Simp. Decl. ¶ 37).

ii. **Raya F. Saksouk** joined MSR as an associate in September 2019. In September 2024, she was promoted to Senior Associate. Her current hourly rate is $375. Ms. Saksouk works primarily on wage and hour class actions and individual civil rights cases, usually involving employment discrimination. She is currently litigating or has recently litigated numerous wage and hour cases, including: *Fuentes, et al. v. Super Bread II Corp., et al.*, No. 18-cv-6736 (D.N.J.) (*pro hac vice*); *West, et al. v. LaserShip, Inc., et al.,* No. 21-cv-5382 (S.D.N.Y.); *Koku, et al. v. GMA Realty Management LLC, et al.*, No. 23-cv-9233 (E.D.N.Y.); and *Bartlett, et al. v. Shubert Organization, et al.,* No. 654022/2023 (N.Y. Cty. Sup. Ct.). Along with Mr. Simpson, she represents the plaintiffs and putative class in *Aguirre et al v. CDL Last Mile Solutions, LLC, et al.*, BER-L-001172-23 (*pro hac vice*), Superior Court of New Jersey Law Division, in which she successfully defeated a motion to compel arbitration at the trial court level, and was the primary drafter of plaintiffs' ultimately successful opposition on appeal (the trial court's decision was upheld. *See Aguirre v. CDL Last Mile Solutions, LLC*, 2024 WL 762467 (N.J. Super. App. Div. Feb. 26, 2024)). (Simp. Decl. ¶ 38).

iii. **Samuel J. Salinger** is a law graduate who joined MSR in September 2024. He has already passed the New York bar examination, as well as the character and fitness test, and will be admitted to the New York Bar on April 24, 2025. He is a 2024 graduate of the

>American University Washington College of Law, where he was a Senior Staffer on the *Administrative Law Review*, a Dean's Merit Scholarship Recipient, and generally focused on labor and employment law. During law school, he was an extern in the Division of Civil Rights and Labor-Management of the U.S. Department of Labor, Office of the Solicitor, and a law clerk at the Major League Soccer Players Association, where he worked on labor and employment matters. (Simp. Decl. ¶ 39).

Finally, the $615 in costs are for the $405.00 filing fee and the $210.00 fee for servicing of the summons and complaint on all the Defendants. (Simp. Decl. ¶ 40, Ex. 4).

    The reasonableness of a fee is ultimately determined by application of the "*Goldberger* factors." *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Those factors include: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

    a.  *The Time and Labor Expended by Counsel*

    Counsel spent over 77 hours of billable time litigating this case. (Simp. Decl. ¶ 41). Counsel met and spoke with both plaintiffs as well as witnesses, engaged in extensive legal research, conducted discovery into the relevant employment relationships, reviewed hundreds of pages of documents and spreadsheets, calculated damages, and engaged in a thorough and productive half-day mediation that put the parties on a path to the present settlement. This was a substantial investment of time and money on the part of Counsel on this contingency fee case. (Simp. Decl. ¶ 42).

    b.  *The Magnitude and Complexities of the Litigation*

    "'FLSA claims typically involve complex mixed questions of fact and law,' and issues must be resolved 'in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings.'" *Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 479 (S.D.N.Y. 2013) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981)). This litigation has lasted over eight months and involved substantial investigation, discovery, and legal and factual research and analysis. (Simp. Decl. ¶ 43). Achieving this settlement required substantial research and analysis on (i) the enforceability of the arbitration and class action waiver agreements signed by Defendants' employees other than the plaintiffs; (ii) whether NYLL § 191 provides a private cause of action for pay frequency claims; and (iii) whether Plaintiffs are manual laborers. (Simp. Decl. ¶ 44).

    Had there been a trial, Plaintiffs would have had to litigate these complex questions of law and fact. (Simp. Decl. ¶ 45). The parties also would have had to conduct significant motion practice on anticipated motions to dismiss, motions for conditional certification and class certification, summary judgment motions, and motions to compel class-wide discovery and pre-class certification. (Simp. Decl. ¶ 46). Further, the volume of anticipated discovery would have

encompassed voluminous electronically stored information requests, thousands of pay records, and at least five depositions. (Simp. Decl. ¶ 47).

      c.   *The Risk of the Litigation*

"Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *In re Dreyfus Aggressive Growth Mut. Fund Litigation*, 2001 WL 709262, *6 (S.D.N.Y. June 22, 2001); *see Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *17 (S.D.N.Y. Sept. 16, 2011) ("Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award."). Considering the complex factual and legal issues involved in this litigation, there is a legitimate question as to Plaintiffs' ultimate success if this case were to go to trial. Specifically, prevailing on Plaintiffs' NYLL §§ 191 and 195(3) claims would require Plaintiffs to show (i) that NYLL § 191 provides a private cause of action; (ii) that Plaintiffs were manual laborers; and (iii) that Plaintiffs were harmed by Defendants' failure to comply with the NYLL § 195(3) notice and recordkeeping requirements.

Further, Plaintiffs would have had to surmount the admittedly challenging hurdle that the arbitration and class action waiver agreements signed by other putative class and collective members were unenforceable. (Simp. Decl. ¶ 48). Even if Plaintiffs were to succeed on each of these issues, Defendants have represented that their clients' limited financial resources may restrict their ability to satisfy any eventual judgment. (Simp. Decl. ¶ 49). Without conceding the prospective success of any of these arguments, Plaintiffs' Counsel believes that the vulnerabilities associated with such complex wage and hour litigation support this request for attorneys' fees. (Simp. Decl. ¶ 50).

      d.   *The Quality of Representation*

Plaintiffs' Counsel respectfully suggests that the quality of representation supports the request for a one-third fee award. "To determine the quality of the representation, courts review, among other things, the recovery obtained and the background of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Here, MSR obtained an excellent outcome for the Plaintiffs in a relatively short period of time. (Simp. Decl. ¶ 51).

      e.   *The Requested Fee in Relation to the Settlement*

As explained above, Courts regularly approve fees that constitute one-third of a gross settlement. The total aggregate settlement amount here is $45,000.00. MSR's lodestar amounts to $37,652.50. Plaintiffs' Counsel requests only $15,615. Therefore, the fee is reasonable in relation to the settlement.

      f.   *Public Policy Considerations*

Vindication of workers' rights to be paid overtime wages serves an important policy purpose. Awarding attorneys' fees to lawyers who take on the risk of litigating wage and hour

cases on a contingency basis incentivizes lawyers to represent workers who may not be able to afford to pay a lawyer on an hourly basis.

The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/

Scott Simpson
*Counsel for Plaintiffs*